(121 N. W. 73.)

---

VICTORIA SOULES v. THE BROTHERHOOD OF AMERICAN YEOMEN..
Opinion filed March 19, 1909.

**Life Insurance — Misrepresentations — Warranties — Effect of.**

1. Section 5934, Rev. Codes 1905, providing that misrepresentations in applications or contracts for insurance shall not be deemed material unless made "with actual intent to deceive or unless the matter misrepresented increased the risk of loss," includes statements in applications called warranties by the law of insurance. Such statutes are remedial and liberally construed.

**Same — Burden of Proof as to Suicide — Proofs of Death — Effect of Statements Therein.**

2. The burden is on the defendant in an action to recover on a life insurance certificate to show that death was caused by suicide, although the proof of death stated on information and belief that the insured committed suicide, where such statement was made under circumstances that this statement could not be attributed to the plaintiff. The proof was not made by her or her agent.

**Same — Suicide Question for Jury —. When.**

3. The question whether an insured person committed suicide is for the jury, when there are circumstances which are conflicting, and show that death may have been caused through a criminal assault by another.

**Appeal and Error — New Trial — Extension of Time in Discretion of Court.**

4. Motions for extension of time within which to file exceptions to a charge, and motions for leave to file an amended motion for a new trial, so as to show newly discovered evidence as an additional ground, are matters resting within the sound discretion of the trial courts, and their decisions thereon will not be disturbed, except in cases of manifest abuse of that discretion.

**Same—Trial—Offer of Proof.**

5. Errors, if any, in sustaining objections to questions put to a party who is under cross-examination as an adverse party, under section 7252, Rev. Codes 1905, cannot be taken advantage of when there is no offer or showing that the answers would be material under the issue formed by the pleadings.

Appeal from Stutsman County Court; *Burke, J.*

Action by Victoria Soules against the Brotherhood of American Yeomen. From a judgment for plaintiff and an order denying a new trial, defendant appeals.

Affirmed.

*R. G. McFarland, J. H. Fraine,* and *S. L. Glaspell,* for appellant.

Intention to show mistake in proof of loss must be pleaded. Travelers Ins. Co. v. Robbins, 27 U. S. App. 547; Travelers Ins. Co. v. Melick, 65 Fed. 178; Mutual Bene. Life Assoc. v. Newton, 22 Wall. 32; Keels v. Mut. Res. Fund Life Assoc. 29 Fed. 198-201; McMaster v. Ins. Co. of N. A. 55 N. Y. 222; Parmalee v. Hoffman F. Ins. Co., 54 N. Y. 193.

Burden is on plaintiff to disprove suicide. Home Benefit Assoc. v. Sargent, 142 U. S. 691; Ingram v. National Union, 72 N. W. 559; Sartell v. Royal Neighbors of Am. 88 N. W. 985; Chambers v. Modern Woodmen, 99 N. W. 1107; Hale v. Life Ind. & Inv. Co., 68 N. W. 182.

Failure to produce documentary evidence in one's possession warrants the presumption that it is prejudicial to him concealing it. Agen v. Met. Life Ins. Co., 80 N. W. 1020; Secs 5952 to 5961, Rev. Codes N. D. 1905; Satterlee v. Modern Brotherhood, 15 N. D. 92, 106 N. W. 561; Brady v. United Iife Ins. Assn., Fed. 727; Mead v. N. W. Ins. Co., 7 N. Y. 530.

If suicide is established beyond controversy defendant is entitled to a verdict. Rev. Codes 1905, Sec. 5952, 5961.

If statements in application are made warranties, such effect must be given them. Johnson v. Dak. F. Ins. Co., 1 N. D. 167, 45 N. W. 799; Satterlee v. Modern Brotherhood, supra; Mead v. N. W. Ins. Co., supra; Brady v. United Life Ass. 60 Fed. 727; 25 Cyc. 811.

*John Knauf* and *M. C. LaSell,* for respondent.

Statements in proofs of loss do not bind as to person who did not make them. Mutual Benefit L. Asso. v. Newton, 22 Wall. 32, 32 L.

Ed. 793; Parmalee v. Hoffman Fire Ins. Co., 54 N. Y. 193; Mc-
Masters v. Pres. & C. Ins. Co., 55 N. Y. 229.

Plaintiff can explain and contradict statements in proofs of death.
Beckett v. N. W. Mas. Aid Assn., 69 N. W. 923; Bentz v. N. W.
Aid Assn., 41 N. W. 1037; Keels v. Association, 29 Fed. 198; Sar-
gent v. Association, 35 Fed. 711; Waldeck v. Ins. Co. 10 N. W. 88.

Only a certificate of attestation required by state renders copies
of court record admissible. Secs. 905, 906, U. S. Rev. S. 1887,
(2nd Ed.); Bank of Alabama v. Dalton, 9 How. 522, 13 L. Ed. 242;
Sykes v. Beck 12 N. D. 260, 96 N. W. 844; 1 Gr. on Ev. Sec. 504,
506 (14th Ed.); Carpenter v. Strange, 141 U. S. 87; Church v.
Hubbert, 2 Cranch 187; Pugh v. Schlindler, 86 N. W. 515; Hurley
v. City of St. Paul, 86 N. W. 427.

Misstatements of fact, whether called warranties or misrepresen-
tations, are misrepresentations. White v. Prov. S. W. L. Assoc. 27
L. R. A. 398; Mut. Life Ins. Co. v. Simpson, 28 L. R. A. 765;
Barnes v. F. Mut. Life Asso. 45 L. R. A. 264.

MORGAN, C. J. This is an action to recover upon a policy of fra-
ternal life insurance issued to the plaintiff's husband for her bene-
fit on the 25th day of July, 1899, for the sum of $2,000. The com-
plaint alleges the payment of the premiums and the issuance of the
policy or certificate of insurance and the subsequent death of the
insured on the 22nd day of July, 1902, and that proof of death was
furnished to the defendant as required by the certificate of insur-
ance and rules of the company, and that payment of the amount has
been refused by the defendant, although duly demanded. The
answer alleges as defenses (1) that the insured made false answers
to certain questions propounded to him in his application for in-
surance, and that such statements were made warranties by the
terms of the application and were false, and rendered the policy null
and void; (2) that the insured came to his death through suicide,
which under the terms of the policy rendered it null and void. The
action came to trial on the 16th day of January, 1907, before a jury
which brought in a verdict in favor of the plaintiff for the full
amount. A motion for a new trial was duly made upon statutory
grounds and was denied, and judgment rendered on the verdict.
On the 23d day of September, 1907, the defendant appealed from the
judgment and from the order denying the defendant's motion for a
new trial. There are 48 assignments of error, but the points especial-
ly urged in the brief and on oral arguments are: (1) That the

verdict was not sustained by the evidence because the same shows that the insured came to his death through suicide. (2) Error at law in the admission and rejection of evidence, and errors in refusing to give requested instructions. (4) The charge given was prejudicially erroneous. (5) Error in not granting an extension of time for the filing of exceptions to the charge. (6) Error in refusing an application to amend the motion for a new trial to include a new ground, to wit, newly discovered evidence. (7) Insufficiency of the evidence to justify the verdict. We will consider these assignments in the order given.

On the question of the cause of death, it may be said that the application and the policy provided that if the insured came to his death through suicide, whether sane or insane, the policy would be null and void. It is claimed by the appellant that the evidence shows that the cause of death was suicide. The jury was fully instructed on the question, and was told that, if the evidence showed that death was caused by suicide, the verdict must be for the defendant. Upon a careful review of the evidence, we are satisfied that the verdict is not against the weight of the evidence; whereas, there are circumstances indicating suicide. There are also circumstances showing that death may have been caused by an assault with a hammer, on which there was blood when it was found close to the body of the insured when his death was discovered. It is clear to us that the verdict should not be disturbed under such circumstances, as the question is one for the jury. When found dead, it appeared that he might have been struck with a hammer from the condition of his head, and a razor was found near his body which did not belong to him, and it may have been that his throat had been cut by some one else with this razor. There was some evidence also that the insured had had some trouble with one of his men who had threatened to get even with him. In this state of the record we would not be justified in saying that the verdict is not sustained by the evidence.

Great stress is laid upon the fact that in the proof of death sent to the company it was stated on information and belief that death was caused by suicide. The claim is made by the appellant that the fact so stated as to the cause of death cannot be contradicted by the beneficiary, in the absence of a pleading showing that the proof stated the cause of death to be suicide through a mistake. This contention cannot be sustained. There are cases holding that the bene-

ficiary will be permitted to show that statements made in proofs of loss or death were made by mistake except on a showing that they were made under such circumstances as to have misled the defendant. But we find no cases, and none are cited, holding that, if a mistake is made in a proof of death as to the cause of death, the same cannot be contradicted without first pleading the mistake. If the jury are satisfactorily shown that the contents of the proof of loss or death were mistakenly made, the misstatement is not material unless there is an estoppel, but there is nothing in the record to show grounds for such an estoppel, even if the proof had been directly made by the plaintiff. The plaintiff, however, did not submit the proofs in this case. She wrote the defendant a letter informing it of her husband's death and gave the number of the policy, and demanded payment. The company answered this letter, but sent no blanks to her for proof of death, but stated in the letter that the local lodge would attend to the matter of proof. Proof of death was thereafter submitted to the company by the local lodge without conference with the plaintiff, and the same was retained by the company, and the plaintiff was never asked to submit anything additional. So far as the plaintiff is concerned, all defects have been waived. Under such circumstances, we see no good reason for now permitting the company to insist or show that the proofs are incomplete or insufficient. It would not be proper to hold the plaintiff to be bound by any statement in such proof. The evidence does not show that she was aware that the cause of death had been stated in the proof to have been suicide. The burden of showing that death was attributed to suicide remains on the defendant, notwithstanding such statements in the proof. The local lodge was not the agent of the plaintiff. It was requested by the defendant to submit proof of death. We do not think that plaintiff should be bound by any statements in the proof, although she says that she authorized the local lodge to submit proofs. By this we think that she must have meant that she acquiesced in the action of the local lodge in assuming the duty of submitting the proofs at the request of the company. The following cases sustain the foregoing principles: Home Benefit Ass'n v. Sargent, 142 U. S. 691, 12 Sup. Ct. 332, 35 L. Ed. 1160; Beckett v. N. W. Masonic Aid Ass'n, 67 Minn. 298, 69 N. W. 923; Bentz v. N. W. Aid Ass'n, 40 Minn, 202, 41 N. W. 1037, 2 L. R. A. 784.

It is claimed by the appellant that the insured made false answers to the questions propounded to him on his application for the policy, and that such false answers to such questions rendered the policy void on the ground that by the terms of the policy such answers were made warranties. The questions which the insured is claimed to have answered falsely are: "(1) Have you ever had any personal injuries or accidents? Give full particulars. (2) Have you ever been away because of impaired health? (3) Give name and residence of physicians who have attended upon and been consulted by you?" The answer to the last question was "None" and to the others "No."

The principal and most difficult question in this case is whether section 5934, Rev. Codes 1905, can be applied in the decision of this case in view of such answers. That section reads as follows: "No oral or written misrepresentation made in the negotiation of a contract or policy of insurance by the insured, or in his behalf, shall be deemed material or defeat or avoid the policy or prevent its attaching, unless such misrepresentation is made with actual intent to deceive, or unless the matter misrepresented increased the risk of loss." This section was enacted in this state in the year 1895, and was not therefore in force when the case of Johnson v. Insurance Co., 1 N. D. 167, 45 N. W. 799, was decided. In Satterlee v. M. B. A. 15 N. D. 92, 106 N. W. 561, the section was referred, but a consideration of it was held unnecessary. It will be noticed that this section applies only to misrepresentations if its language cannot be made to include warranties by a liberal construction of its provisions. The contents of the certificate of insurance and of the application were couched in such language that there is no room for contention that the answers to certain questions were not made warranties, as will be shown by the following extracts: In the certificate of insurance it is stated "this benefit certificate is issued and accepted upon the following express warranties, conditions, and agreements: First, that the application of the above-named member, and medical examination for membership in this order, which is hereby referred to and made a part of this contract for benefits is true in all respects, and that the literal truth of such application, and each part thereof, shall be held to be a strict warranty, and to form the only basis of the liability of this order to such member, and to beneficiary, or to beneficiaries, the same as fully set forth in this certificate." The policy was indorsed by the following

certificate which was signed by the insured: "I * * * accept the above benefit certificate and agree to all the conditions therein contained." In the above application the insured made the following statements: "I am in sound physical condition and warrant the statements together with the answers made by me are true, and I warrant same to contain all the facts relative to my condition, past and present, and they shall form the basis of contract for membership in said association, and certificates between me and my beneficiary, and all parties who may at any time have an interest therein, and the said brotherhood and any other. Untrue answer or suppression of facts, in regard to my health, personal habits or physical condition, * * * shall immediately make said benefit certificate null and void." From these extracts we are convinced that the answers to the questions propounded in the application are warranties, and should be construed as such, unless a different result can be reached through a liberal construction of said section 5934. That section was in force when the application for the policy in suit was made in the year 1899, and its provisions became in effect a part of every contract of insurance made after its enactment. We are satisfied that it was the legislative intention that all misrepresentations should be without effect unless made with intent to defraud or unless the risk was increased by reason of any misrepresentations. It is true that there is a well defined distinction in the law of insurance between what are called warranties and misrepresentations. Warranties become merged in the contract, and are therefore conditions precedent that must be strictly complied with before the contract can be enforced. Warranties, in the absence of statutes, have always received a strict construction, and must be strictly complied with, and matters of intention or materiality, the existence of good faith or bad faith, whether prejudice followed the statements warranted, are not at all controlling, as the contract is to be enforced as it reads. "There is no room for construction; no latitude; no equity." May on Ins. § 156. Where misrepresentations merely are concerned, matters of good or bad faith or prejudice and the other matters before mentioned may be considered to determine whether the misrepresentations affect the contract or not. Representations do not become conditions precedent, but are simply inducements to the contract. We reach the conclusion that said section should be construed to include warranties for these reasons: First, because such construction is within the language of the sec-

tion. All false warranties are included within the word "misrepresentations." In the second place, the statute is remedial in its evident purpose. It is a matter of common knowledge that insurance policies have often been rendered of no benefit on account of the fact that misstatements as a matter of fact immaterial were made warranties by the contract. It must have been the intention of the Legislature to effectuate some change by the enactment of this statute. If it be construed to apply only to misrepresentations as understood in insurance law, then no material change was made from the law as it existed before section 5934 was enacted. Prior to the enactment of that section as shown by the following quotation from 25 Cyc. p. 811, 812, the construction given to misrepresentations in applications was as follows: "If the statements are made warranties, it is immaterial whether or not the insured had knowledge of their falsity; but, as to statements relied upon by the company as constituting misrepresentations, it is necessary to show that they were false to the knowledge of the insured unless they materially affect the risk."

A section of the insurance law of the state of Massachusetts which is identical with section 5934 was construed by the Supreme Court of that state in the year 1895, and that court used the following language in its decision: "It is easy to see how an insurer, by multiplying immaterial statements to be made by the insured, and giving to them by the wording of the policy the technical character of warranties, can, in the absence of any statute provision upon the subject, place the assured in a position in which it will be difficult, if not impossible, for him, although he has acted in good faith, to recover upon his contract because of some inaccurate statement on his part. If he is held to have warranted the truth of a statement, its exact and literal truth is a necessary condition of his right to recover, however immaterial the statement may be, and however honest may have been his conduct. In the opinion of the majority of the court it was the intention of the Legislature by St. 1878, c. 157, to change this rule to some extent, and to enact in place of it one which should hold a contract valid, unless the misstatement, if made in the negotiation of the contract, was made with actual intent to deceive, or unless the misstatement was of a character which actually increased the risk of loss, and this with reference to statements which may be said by the parties to be warranties, as well as those which were only representations. Such was already the law as to statements not technical warranties. As to mere representa-

tions the statute may be held to be only declaratory, but as to warranties it made a new rule. In the opinion of a majority of the court it speaks in terms neither of warranties nor of representations technically so called, but deals with all misrepresentations made in negotiating the contract or policy. Misstatements of fact, whether the statement is said to be by the parties a warranty or a representation, are equally misrepresentations, and are placed in each case upon the same footing by the statute which applies to them if the statements are called warranties by the parties no less than if they are mere representations." White v. Provident Savings Life Assur. Society, 163 Mass. 108, 39 N. E. 771, 27 L. R. A. 398. A similar statute is also in force in the state of Missouri, and that statute was under consideration. In Jenkins v. Covenant Mutual Life Insurance Company, 171 Mo. 375, 71 S. W. 688, the court said: "It is indisputable that before the passage of the act in question and up to the time of the decision in Jacobs v. Life Ass'n, 146 Mo. 523, 48 S. W. 462, it was always held by the Supreme Court that there was a very material distinction between warranties and representations, and where a policy was applied for and the applicant warranted some matter, however immaterial to the risk, and whether or not the assured died of any disease warranted against, if the warranties were shown to be untrue, the policy was held to be void (citing cases). But they were by that case placed upon the same footing and rightly held to be embraced within the provisions of section 7890, supra. There is no more reason why a warranty not material to the risk should vitiate a policy than there is that misrepresentations as to a nonmaterial fact should do so." In Jacobs v. Life Ass'n, 146 Mo. 523, 48 S. W. 462, the court said: "It is not pretended that the matters misrepresented contributed to the death of Jacobs; and the contention resting solely on the ground that the misrepresentations were warranties, and as such exempt from the operation of this statute for the reason that the defendant's insurance contracts were upon the assessment plan, this contention must fail. In 25 Cyc. p. 807 the rule is stated as follows: "Although the provisions of the statute may expressly relate only to false statements and misrepresentations, they are construed as applicable to such statements or misrepresentations as are made warranties in the policy itself or by reference to the application and also to statements contained in an application for reinstatement." See also, Dolan v. Mutual Reserve Fund Ass'n, 173 Mass, 197, 53 N. E.

398, Kidder v. Order Golden Cross, 192 Mass. 326, 78 N. E. 469; 25 Cyc. p. 811, 812, and cases cited; Waterbury v. Insurance Co., 6 Dak. 468, 43 N. W. 697; 2 Cooley's Briefs on Insurance Law, p. 1189, and cases cited.

The appellants also insist that the court should have given the jury an instruction which was requested to the effect that if they found that the plaintiff had in her possession a certain note which was found upon the person of the decedent, and failed to produce the same, it would be presumed that the contents of such note would be prejudicial to the claim of the plaintiff. It is sufficient answer to this contention to say that the evidence showed without any contradiction that the note referred to was not in the possession of the plaintiff or her attorney at the trial. The evidence also shows that the note had been lost without fault of the plaintiff or her attorney. The requested instruction, therefore, had no applicability to the evidence.

It is also contended by the defendant that the court erred in sustaining objections to the questions propounded to the plaintiff when called for cross-examination under the statute. All these questions referred to a lawsuit which the plaintiff's husband brought against the Northern Pacific Railway Company to recover for an injury which he had received through the alleged carelessness of said company in the year 1891. There is nothing in the record showing in the remotest degree that the injury so received and for which the suit referred to was brought increased the risk under the policy taken out by the plaintiff's husband in the year 1899. Such answers were therefore immaterial in the absence of an offer to prove or a showing that such injuries affected the risk under the policy in suit.

It is also urged by the appellant that the trial court erred in refusing an extension of time for filing exceptions to the charge. These matters are so completely within the discretion of the trial court that this court will not interfere with its action unless there is a manifest abuse of discretion. In this case, after a review and consideration of what transpired in regard to the filing of exceptions, we are convinced beyond a doubt that there was no abuse of discretion.

It is contended by the appellant that judgment was entered for a sum in excess of the amount actually payable under the policy, conceding liability thereunder. At the close of the trial the defendant

asked leave to open the case to introduce certain mortality tables, showing what was the expectancy of the insured's life at the time of the taking out of this policy. The court stated that it would not be necessary to open the case for that purpose, but that he would make any deductions shown to be allowable under the terms of the policy, providing the defendant would furnish him with such mortality tables. The defendant took an exception to this ruling. We do not think that any prejudice followed on account of this ruling. Appellant should have made an application to modify the judgment or in some way brought the error, if any, of not making deductions in entering the judgment to the attention of the court. This alleged error is not even specified as such in the statement of the case, nor is it included in any of the grounds set forth in the motion for a new trial. There is therefore no merit in this contention in view of the state of the record. There is nothing to show that the trial court passed on this precise question; that is, that the verdict and judgment are for an excessive amount. The defendant made an application to amend its motion for a new trial to include an additional ground, to wit, newly discovered evidence, and based the motion upon affidavits. The statements in such affidavits were denied in a counter affidavit submitted by the plaintiff. We do not think there was any abuse of discretion in denying the motion. The alleged newly discovered evidence pertained to the injury of the insured in 1891. There is nothing in the affidavit showing that such injury in any manner affected the plaintiff's physical condition at the time the policy was taken out. Under our construction of section 5934, the statements in these affidavits showing misrepresentations or false warranties would become immaterial if proved, unless made with intent to defraud or in case the risk was increased. We are also satisfied that it was not an abuse of discretion to deny that motion for the reason that the defendant did not exercise diligence in producing the testimony at the trial. It is urged generally that the verdict is not sustained by the evidence. The basis of this contention is that the evidence shows that misrepresentations of certain matters were made by the insured when he applied for this insurance. So far as the record shows, they were immaterial representations or warranties under our construction of said section 5934, and would not be any ground for a new trial if proved.

Finding no reversible error in the record, the judgment is affirmed. All concur.