ARNESON, Respondent, v. NERGER, Appellant.

(147 N. W. 982.)

1. **Trover—Conversion—Defenses—Tender of Property, After Conversion—Supplemental Answer.**

   After the conversion of property has become complete, the wrongdoer cannot escape liability, nor lessen the actual damage recoverable, by a tender back of the converted property; and leave to file a supplemental answer alleging such tender was properly denied.

2. **Trial—Verdict—Error in Computation—Remission of Excess.**

   Where the jury, through an obvious error in computation, rendered a verdict for an amount in excess of the correct amount, the trial court, in correcting the verdict before entry of judgment, committed no error.

3. **Trial—Verdict—Excess—Error In Computation—Prejudice of Jury.**

   In an action for conversion of corporate stock, where the jury specially found the stock was of a value equal to amount

of defendant's counterclaim, and they were instructed to compute interest on the stock from date of conversion to trial, held, that the fact that the jury rendered a verdict for $57. in excess of the interest, the error being plainly the result of an erroneous computation, does not show passion and prejudice.

4. **Trial—Exclusion of Evidence—Offer of Proof, Necessity of.**

Assignments of error complaining of exclusion of evidence will not be sustained, where appellant merely asked witnesses questions, there being nothing in the record indicating that the answers would have disclosed any material evidence, and no offer of proof was made.

5. **Evidence—Competency—Value of Corporate Stock—Value of Assets.**

In trover for conversion of corporate stock, which was not listed or quoted on the stock market, and had no value on the open market, held, that evidence of the value of the corporate assets is admissible to show value of the stock.

6. **Evidence—Inventory of Corporate Property—Account Book, Authentication by One of Several Participants.**

A book containing an inventory of assets of a corporation, made by one of five persons participating in the making thereof, where only one of those persons testified to its accuracy, although he wrote down the items given him by the others, is not admissible as against third persons, to show value of the assets, it not appearing that the others were absent from the jurisdiction, insane, or dead.

McCoy, J., concurring in the conclusion only.

(Opinion filed June 29, 1914.)

Appeal from Circuit Court, Day County. Hon. FRANK Mc-NULTY, Judge.

Action by Olaf Arneson against E. A. Nerger, for conversion of corporate stock. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Reversed and remanded.

*Anderson & Waddell,* for Appellant.

*H. H. Potter* and *Campbell & Walton,* for Respondent.

(1) Under point one of the opinion, Appellant cited:

31 Cyc. Pages 507-8; Holyke v. Adams, 59 N. Y. 233; Dusty v. Lancing, 3 N. Y. St. 699.

Respondent cited:

Munier v. Zachery, 138 Iowa, 219; 16 Am. & Eng. Ann. Cases, 526; Donley v. Gladiator Co., 134 Iowa, 468.

(2) Under point two of the opinion, Respondent cited:

Doyle v. Edwards, 91 N. W. 322.

(3) Under point three of the opinion, Appellant submitted:

That the action of the jury was prompted by passion and prejudice.

Respondent submitted:

The Court in entering judgment corrected the error of the jury in its computation of interest on the value of the stock, and properly entered judgment in accordance with the special findings of the jury as to the value. The jury were instructed by the Court to compute interest on the value of the stock at 7 per cent and add it to such value. This act of computation involved no consideration of the evidence. It was purely mathematical. It does not indicate either passion or prejudice.

(6) Under point six of the opinion, Appellant submitted:

There was nothing to show that the testimony of each one of the persons assisting in taking this inventory was not available or could not be produced.

Respondent cited:

Chamberlain's The Modern Law of Evidence, Vol. 3, Sec. 2175.

SMITH, P. J.    The Elevator Store Company was a domestic corporation doing business in the city of Webster, Day County. Its stock was divided into 750 shares of the nominal value of $100.00 per share. The plaintiff Arneson, was the owner of 250 of these shares. On Jan. 22, 1910, he executed and delivered to the defendant Nerger, seven promissory notes, aggregating $16,-500, bearing interest at 8 per cent per annum, and to secure payment thereof, executed and delivered a chattel mortgage on said stock, which contained a provision that upon default, the mortgagee was authorized to sell the shares of stock at public sale, as provided by law. Default was made in payment of one of the notes due Jan. 1, 1912, and of interest on the remaining notes. The mortgagee foreclosed by advertising the property for sale, at the front door of the Elevator Store building, in the town of Webster, and himself bid it in for an amount sufficient to satisfy the indebtedness.    Thereafter, Nerger sold and transferred the stock to one Smail.

Plaintiff brings this action to recover the value of the stock, alleging that the mortgage sale was void, because held at a place not designated by the Board of County Commissioners, and the defendant thereby became guilty of conversion.

The answer admits these facts, but alleges that the sale was made at the front door of the Elevator Store building at the request of, and with the knowledge and consent of the plaintiff, and that plaintiff agreed to and acquiesced in said sale, after the sale and before the stock was transferred to the purchaser on the books of the corporation.

The answer also admits that Nerger sold the shares of stock to Andrew Smail, after he purchased it, at the foreclosure sale. The answer also alleges that the stock was not of any greater value than the amount of plaintiff's indebtedness on the promissory notes, to-wit: $16,746.60. Defendant also pleads the indebtedness as a counterclaim, and alleges that the sum of $17,746.60 is due thereon, and prays that the amount be set off against any judgment recovered by plaintiff.

[1] Plaintiff replying to the counterclaim admits the amount due on the notes, and that defendant is entitled to have the same set off against any judgment he may recover, and consents that the amount of plaintiff's recovery be reduced by the amount due on the notes. After issue joined, defendant asked leave to file a supplemental answer which alleged that after the commencement of this action, defendant purchased and became owner of the 250 shares of capital stock, which he alleges to be "of equal or greater value" than at the time of the sale complained of by defendant, and brings the stock into court and tenders it to plaintiff, subject to his lien, under the chattel mortgage. Leave to file the supplemental complaint was denied, and appellant assigns this ruling as error. In this ruling the trial court committed no error. The rule as stated in Munier v. Zachary, 138 Ia. 219, 114 N. W. 525, 18 L. R. A. (N. S.) 572, 16 A. & E. Ann. Cas. 526, is sustained by the authorities.

"After the conversion of property has become complete, the wrongdoer cannot escape liability nor lessen the actual damage recoverable by a tender back of the property." Dooley v. Gladiator Co., 134 Ia. 468, 109 N. W. 864, 13 Ann. Cas. 297.

The case was tried to a jury, which returned a verdict for plaintiff upon all the issues, for $1241.24 damages.

Defendant appeals from the judgment thereafter entered, and from an order overruling motion for a new trial, and assigns as error rulings on evidence and in the giving of certain instructions.

[2] It is conceded in appellant's brief, that at the time of the trial, the promissory notes with interest amounted to $17,500. The jury by a special finding determined that the stock was of the value of $17,500 when the conversion occurred Feb. 12, 1912. The court instructed the jury to compute interest at 7 per cent on the value of the stock, from the date of conversion to the time of the trial, Feb. 5, 1913. It is apparent therefore, that plaintiff's recovery under the instructions of the court, could not exceed the amount of interest on the value of the stock, from Feb. 17, 1912, to Feb. 5, 1913. Appellant concedes that this interest would amount to $1,184.17, but complains because the verdict of the jury was for $1241.24. The verdict does exceed the amount due as interest, in the sum of $57.07. It is perfectly clear, however, that the erroneous verdict, under the issue as submitted to the jury, must have resulted from an error in the computation of interest. After the jury had determined the value of the stock when converted, the computation of interest was merely a mathematical proposition, and involved no consideration of evidence. The error was one which the court had a right to correct, either upon a motion for a new trial or without it. The same principle is involved as that recognized in Doyle v. Edwards, 15 S. D. 648, 91 N. W. 322, where the court said:

"But the law seems to be quite well settled that when the rule for the measure of damages is fixed and definite and the case discloses the necessary facts to enable the court to determine the exact sum which the plaintiff is entitled to recover under the verdict, the court may properly make a conditional order that a new trial be granted unless the excess be remitted."

The trial court entered judgment for the correct amount.

[3] Appellant contends that the excess verdict shows that the jury entirely misapprehended or disregarded the instructions of the court and that the verdict was prompted by passion or prejudice. But the excess verdict was so plainly the result of an erroneous computation of interest as to make it clear that appellant

is wrong in the inference he seeks to draw, especially as nothing appears in the record, either in the evidence or the conduct of witnesses, parties or jurors themselves, giving color to appellant's view.

[4] Appellant next contends that the court erred in its rulings excluding evidence claimed to show that plaintiff consented to and acquiesced in the acts constituting the alleged conversion, and therefore should be estopped from maintaining this action. It is perhaps true, that the answer states facts which, if established, might tend to show an estoppel. There is not in the record, however, a single syllable of evidence tending to show that plaintiff ever consented to or acquiesced in the alleged wrongful act of conversion. Appellant's whole contention, under this proposition, is based upon alleged error of the trial court in sustaining defendant's objection to one question propounded to the witness Hart, and a question to the defendant's witness Nerger, as stated in assignments 6 and 9. Hart testified that prior to the mortgage foreclosure, plaintiff left the stock with him to be sold, and was willing to sell it for an amount covering his indebtedness to Nerger; that he had some talk with him in relation to the foreclosure sale; that Mr. Nerger was present; that witness told Arneson he should protect himself against any balance which might be left unpaid after the foreclosure sale, and that plaintiff said, "Mr. Chilson and they will be there to bid on it." Appellant's counsel then asked the witness Hart, "Did he say anything about where the stock was to be sold?" Appellant's counsel also propounded to the witness Nerger the question, "What, if anything, did you hear Mr. Arneson say to Mr. Hart in relation to it?" Objection was made and sustained to each question, and these rulings are assigned as error.

Appellant assumes that answers to these questions would have disclosed plaintiff's consent to and acquiesence in the sale of the mortgaged property, at a place other than that designated by the Board of Commissioners, but there is nothing whatever in the record, to indicate that the answers to these questions would have disclosed any statements amounting to an estoppel, if the witness had been permitted to answer. In this state of the record, it is impossible for this court to say that the trial court erred to appellant's prejudice in sustaining the objections.

In Hanson v. Township of Redrock, 7 S. D. 38, 63 N. W. 156, this court said:

"To show available error, the plaintiff should have gone further, and offered to prove the substantive fact to which this question of knowledge on the part of the witness was only introductory or preliminary. To show that this ruling did not constitute material and available error, we have only to suppose that we reverse this case on that ground, and upon a retrial the witness is asked the same question, and his answer is, 'No I do not.'"

In Houghton v. Clarke, 80 Cal. 417, 22 Pac. 288, the rule in such cases is stated to be:

"If a question does not itself indicate whether the answer would be material or not and there is no offer to prove the facts sought to be elicited, it is not a material error to exclude the question."

In State v. Yokum, 11 S. D. 544, 79 N. W. 835, it was held that excluding a question asked of defendant on trial for murder, as to what occurred between him and deceased while out walking together, is not erroneous, where no offer was made showing that any material fact could have been elicited, had the question been answered. Briston & Escow v. Skabble, 17 N. D. 271, 115 N. W. 841; Soules v. B. of A. Y.; 19 N. D. 23, 120 N. W. 760; Regan v. Jones, 14 S. D. 591, 105 N. W. 613. There was no offer to show any statements made by plaintiff in the conversations referred to, which in any manner would tend to sustain the allegations relied upon as an estoppel.

The facts being conceded, the trial court instructed the jury that the attempted foreclosure sale, constituted a conversion of the stock as a matter of law. Appellant excepted to this instruction. but in his brief, concedes that the error in the instruction is merely a consequence of the court's error in excluding evidence tending to show that the mortgaged property was sold at the wrong place, upon request of plaintiff. What has already been said in regard to the exclusion of evidence without offer of proof, disposes of this contention. In the absence of any evidence tending to substantiate the alleged estoppel, the trial court did not err in its failure or refusal to submit that issue to the jury, and reversible error is not shown by the record.

[5, 6] The trial court, over defendant's objection, admitted in

evidence a book purporting to contain an inventory of the merchandise and personal property belonging to the corporation taken in Jan. 1912, as tending to show the value of the stock converted by the wrongful foreclosure. The book was objected to for the reason that no proper foundation had been laid. Mr. Chilson testified that he had been connected with the merchandise business of the Elevator Store Co., corporation, for 12 years, was a stockholder; had been familiar with the affairs of the corporation since March, 1908, and was president of the corporation the last three years; that the book referred to purported to be an inventory of the stock of merchandise which belonged to the corporation in Jan. 1912; that he personally assisted in making the inventory, but could not say how much of it he did himself; that four other persons in the employ of the corporation, assisted in making the inventory, and all worked together; that he took down the figures given by his assistants and entered them in the book, but could not swear to the correctness of the work of either of the assistants; that the inventory was taken in the usual course of business, and he believed it to be correct. The defendant Nerger testified that he heard the testimony of Mr. Chilson as to the manner in which the inventory was taken and that this was exactly the way inventories were taken before; that he was also with the Elevator Store Co. for nine years, and was one of the managers during all of that time. So far as the record discloses, it does not appear that the stock of the corporation was listed or quoted on the stock market, or had any value on the open market. In such case, we think evidence of the value of the assets of the corporation is competent as tending to show the value of the corporate stock. Klaveness v. Freese, 145 N. W. 561-6; Chamberlayn's Modern Law of Evidence, Vol. 3, Sec. 2175. But the real question is whether the inventory itself, authenticated by the testimony of Chilson alone, is competent evidence tending to show the value of the merchandise and property of the corporation, as against the defendant Nerger. In an action against the corporation itself, under the general rule of admissions, such an inventory, shown to have been made by officers and employees of the corporation in the usual course of business, would undoubtedly be competent evidence, if material, without further authentication. But as be-

tween third persons, or when offered in favor of the party or corporation, the rule appears to be different.

"Where one person makes an entry from memoranda or information furnished by another, or two or more persons have otherwise cooperated in making an entry, the entry will be admissible in connection with the testimony of all the parties participating. Indeed it is held that where the clerk who makes the entries has no knowledge of their correctness, but makes them as the items furnished by another, as for instance where entries are made by a bookkeeper from reports made by a foreman, it is essential that in addition to the oath of the party making the entry the party furnishing the items should testify to their correctness, or that satisfactory proof thereof, such as the transactions are reasonably susceptible of, from other sources should be produced." 17 Cyc. 394 (7).

The same rule applies when the evidence is offered in favor of a municipal corporation. Darlington v. Atlantic Trust Co., 68 Fed. 849, 16 C. C. A. 28; Union Electric Co. v. Seattle Theatre Co., 18 Wash. 213, 51 Pac. 367; Price v. Standard L. Ins. Co., 90 Minn. 264, 95 N. W. 1118; Chicago Lumber Co. v. Hewitt, 64 Fed. 314, 12 C. C. A. 129.

There are certain exceptional cases in which the courts have held that records kept in the usual course of business which are made up from the memoranda furnished by numerous employees in a complicated and complete organized business system, are admissible without the testimony of each employee. In certain other cases, death, insanity, sickness or residence beyond the jurisdiction have been held to excuse the absence of the testimony of parties who made the record or memoranda. But all such exceptions are founded upon necessity and convenience in the transaction of judicial business, the assumption of regularity in systematized business methods, and the presumed absence of improper motives on the part of numerous employees. In the case before us one of the parties to the making of this inventory was the plaintiff himself. It was prepared shortly before the foreclosure. It is the only evidence offered by plaintiff to show the actual value of the corporate stock. The situation is not sufficient to exclude the suggestion of employee's motives in the preparation of the inventory.

We are not called upon in this case to consider whether an inventory of merchandise may fall within any of the exceptions to this general rule, or could be received in evidence without authentication by the testimony of the persons who made it as against persons other than the corporation itself.

The record in this case, shows that the witness Chilson and at least four other persons were engaged in making the inventory; that Chilson entered in the inventory book the items furnished by these persons, and himself did some of the inventory work. It is apparent that at least four-fifths of the inventory must have been made from memoranda furnished by the four assistants, and Chilson says he cannot testify to the correctness of the items furnished him by the others. Why the four assistants were not called to testify is not disclosed by the record. The objection to the offer directly called attention of respondent to the fact that the entries were not authenticated by the testimony of those engaged in making the inventory. We are clearly of the opinion the trial court was in error in receiving the inventory in evidence, without proper authentication, as against the defendant Nerger.

The order and judgment of the trial court must be reversed and a new trial granted.

McCOY, J., concurs in the conclusion only.